IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM JOHNAKIN and CHRIS YOUNG, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 21-5366 |
| | : | |
| v. | : | |
| | : | |
| PRIME CARE MEDICAL, BERKS COUNTY JAIL SYSTEM, WARDEN JEFFERY SMITH, and CHIEF DEPUTY WARDEN STEPHANIE SMITH, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                              March 25, 2022

The plaintiffs were pretrial detainees in a county jail when they claim that inmates in the jail who were working in the kitchen contracted COVID-19, causing the jail to commence a lockdown. They assert that neither the jail nor the private company performing medical services at the jail were equipped to properly handle COVID-19. They also appear to be upset that no one at the jail informed them of the precise reason for the lockdown.

The plaintiffs have now brought claims for constitutional violations under 42 U.S.C. § 1983 against the jail, the private medical provider, the warden, and the chief deputy warden. They seek millions of dollars in damages because they believe they are at risk of contracting COVID-19 and were not notified of the COVID-19 outbreak. They have also sought leave to proceed *in forma pauperis*.

Although the court will grant the plaintiffs leave to proceed *in forma pauperis*, the court will dismiss the complaint with prejudice. The plaintiffs may not proceed with their claims against the jail because it is not a proper party to be sued under section 1983. As for the claims against the

warden and chief deputy warden, who are sued in their official capacities, the plaintiffs have not included sufficient allegations to state a plausible claim against them because they do not assert that any constitutional violations were caused by a custom or policy. Regarding any claims against the private medical provider, the plaintiffs' claims fail for the same reason, as they fail to allege that any policy or custom caused the constitutional violations. Furthermore, the plaintiffs never allege that they were injured while at the jail.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiffs, William Johnakin ("Johnakin") and Chris Young ("Young"), who were formerly pretrial detainees at Berks County Prison ("BCP"), filed this civil rights action against the defendants, Prime Care Medical ("Prime Care"), Berks County Jail System, Warden Jeffery Smith (the "Warden"), and Chief Deputy Warden Stephanie Smith (the "Deputy Warden"), which the clerk of court docketed on December 6, 2021. *See* Doc. No. 2. Although the plaintiffs also filed an application for leave to proceed *in forma pauperis* (the "IFP Application"), *see* Doc. No. 1, they did not submit prisoner trust fund account statements as required by 28 U.S.C. § 1915(a)(2).[1] Because the plaintiffs did not submit their account statements, this court entered an order on December 14, 2021, which required them to submit copies of their account statements to the clerk of court within 30 days. *See* Doc. No. 4. The plaintiffs timely submitted their account statements on January 3, 2022. *See* Doc. Nos. 6, 7.

---

[1] Section 1915(a)(2) provides:

> A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(a)(2).

In the complaint, the plaintiffs allege that the BCP was placed on lockdown status due to COVID-19 on November 24, 2021.[2] *See* Compl. at ECF p. 5, Doc. No. 2. The BCP inmates were allegedly not informed that the lockdown was due to an inmate working in the kitchen contracting COVID-19. *See id.*

By November 30, 2021, the BCP had replaced the 20 inmates working in the kitchen with inmates from the plaintiffs' cell block and another block in the jail. *See id.* Apparently, the virus spread to two cell blocks because these inmates "basically have a run of the jail, the clearance to move freely through out [sic] the jail and work in every part of the jail." *Id.*

The plaintiffs submitted a grievance about why the BCP did not let them know about the inmate working in the kitchen contracting COVID-19. *See id.* In response to this grievance, the BCP indicated that "their protocols do not include informing other inmates in the jail." *Id.*

The plaintiffs allege that Prime Care provides medical services at the BCP, and they believe that it is unequipped to handle the demand that COVID-19 caused. *See id.* Prime Care is unequipped to handle the COVID-19 situation at the BCP because it is understaffed and lacks

---

[2] While the factual allegations referenced here are those the plaintiffs included in the complaint, the court notes that the plaintiffs filed two joint motions to amend the complaint. *See* Doc. Nos. 5, 9. Neither of these proposed amendments complied with Rule 10 of the Federal Rules of Civil Procedure. In addition, neither proposed amendment contained the claims asserted in the original complaint. Therefore, by orders entered on January 5, 2022, and February 2, 2022, the court denied each motion to amend without prejudice and instructed the plaintiffs to file a comprehensive amended complaint containing all claims they sought to pursue in this lawsuit. *See* Jan. 5, 2022 Order at 1–2, and n.1 Doc. No. 8; Feb. 2, 2022 Order at 1–2, and n.1, Doc. No. 10. The orders also warned the plaintiffs that if they failed to file a proper amended complaint, the court would proceed to screen only the original complaint as required by 28 U.S.C. § 1915. *See* Jan. 5, 2022 Order at 2; Feb. 2, 2022 Order at 2.

Although the January 5, 2022 Order apparently reached the plaintiffs, the February 2, 2022 Order was returned as undeliverable by the United States Postal Service due to the plaintiffs having been released from custody at the BCP. *See* Doc. Nos. 11, 12. Neither plaintiff has submitted a change of address as required by Rule 5.1(b) of the Local Rules of Civil Procedure.

The court also notes that while there are two plaintiffs, both of whom signed the complaint, most of the allegations are written in the first person using the pronoun "I". The handwriting in the pleading appears to match Johnakin's signature. Nonetheless, construing the complaint liberally, the court will consider the allegations as raised by both plaintiffs.

sufficient medical equipment and medication. *See id.* The plaintiffs claim that it takes almost 30 days to receive regular medications after they have been prescribed. *See id.*

In addition to Prime Care being unequipped to handle COVID-19, the plaintiffs claim that the BCP lacks adequate space to do so. *See id.* at ECF pp. 5–6. The BCP has only 24 cells in the medical unit to handle ill inmates. *See id.* at ECF p. 6. Also, BCP staff must move between the infected blocks and the uninfected blocks, which runs the risk of spreading COVID-19 to the uninfected inmates. *See id.* The plaintiffs also contend that the nursing staff are overwhelmed. *See id.*

The plaintiffs assert that COVID-19 has killed hundreds of thousands of people across the country and hospitalized numerous others. *See id.* at ECF pp. 6–7. They assert that the BCP and Prime Care are violating the Eighth Amendment by failing to properly address COVID-19 and "for making people deliberately [sic[ get thrown into a [h]ostile [e]nvironement without being duly informed or apprised of the current situation." *See id.* at ECF pp. 6, 7. They further contend that Prime Care has violated the Fourteenth Amendment because it has "control of who, what, where, and when [medical services] are performed." *Id.* at ECF p. 7. They also allege that Prime Care and the BCP receive state funding "but nothing is being done to protect the health and lives of the inmates." *Id.* at ECF p. 8. They seek $10 million in combined damages "because the health of both plaintiffs are at risk and there was no prior notification at all [of the COVID-19 outbreak]." *Id.* at ECF p. 9.

## II.    DISCUSSION

### A.    The IFP Application

Regarding applications to proceed *in forma pauperis*,

any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein,

> without prepayment of fees or security therefor, by a person who submits an
> affidavit that includes a statement of all assets such prisoner possesses that the
> person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal
> courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338
> (1989). Specifically, Congress enacted the statute to ensure that administrative
> court costs and filing fees, both of which must be paid by everyone else who files
> a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.
> *Deutsch*[ *v. United States,* 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, §
> 1915(a) allows a litigant to commence a civil or criminal action in federal court in
> [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things,
> that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct.
> 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote

omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable

to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir.

1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the

litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this

Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must]

review the affiant's financial statement, and, if convinced that he or she is unable to pay the court

costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at

1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that the plaintiffs are unable to prepay

the fees to commence this civil action. Therefore, the court will grant the IFP Application and

permit them to proceed *in forma pauperis*.[3]

---

[3] As the plaintiffs were prisoners when they filed the case, they must fully pay the $350 filing fee in installments due
to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b). Recognizing that the plaintiffs have been released from

**B.**    **Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted the plaintiffs leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to

---

custody, the order accompanying this decision instructs the warden of the BCP to collect the fee if either plaintiff is ever reincarcerated.

dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### C.     Analysis

The plaintiffs appear to be seeking relief in this case under 42 U.S.C. § 1983. This statute

provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege

and prove that a "person" deprived the plaintiff of a constitutional right while acting under color

of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff

must allege the violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under color of state

law."). In addition, the plaintiff must allege that each defendant was personally involved in the

alleged constitutional violation and assert how each defendant was involved in the events and

occurrence giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998).

### 1.     Claims Against Berks County Jail System

Although the plaintiffs have named the Berks County Jail System as a defendant, they may

not assert a section 1983 claim against this defendant. As evidenced by a review of the statute,

section 1983 "applies only to 'persons.'"  *Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A.

92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995). A

county correctional facility is not a "person" amenable to suit under section 1983. *See Regan v.

Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009) (stating

that "a prison or correctional facility is not a 'person' that is subject to suit under federal civil

rights laws"), *aff'd*, 363 F. App'x 917 (3d Cir. 2010); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (per curiam) (concluding that district court properly dismissed claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability[, the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)); *Mincy v. Deparlos*, 497 F. App'x 234, 239 (3d Cir. 2012) (per curiam) (determining that district court properly concluded that county prison is not "person" within meaning of section 1983). Accordingly, the court will dismiss with prejudice the plaintiffs' section 1983 claims against the Berks County Jail System (or BCJ) as frivolous and for the failure to state a claim because it is not a "person" within the meaning of section 1983. *See Santana v. Berks Cty. Jail System*, Civ. A. No. 20-1226, 2020 WL 3574544, at *3 (E.D. Pa. July 1, 2020) ("Any § 1983 claims against the Berks County Jail System must be dismissed as frivolous because a prison is not a 'person' amenable to suit under Section 1983." (citation omitted)); *Johnakin v. Berks Cty. Jail Sys.*, Civ. A. No. 19-CV-3989, 2019 WL 4722214, at *3 (E.D. Pa. Sept. 25, 2019) ("The § 1983 claim against Berks County Jail System is dismissed as frivolous because a jail is not a 'person' under Section 1983." (citation omitted)).

2.      **Claims Against Warden Jeffery Smith and Chief Deputy Warden Stephanie Smith**

The plaintiffs have sued the Warden and Deputy Warden in their official capacities only. *See* Compl. at ECF p. 3. Official capacity claims against individuals such as the Warden and Deputy Warden are indistinguishable from claims against the governmental entity that employs them, here, Berks County. *See Graham*, 473 U.S. at 165–66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

9

Based on the above, to plausibly assert a claim against the Warden and Deputy Warden in their official capacities, the plaintiffs must include sufficient allegations that would allow for liability against Berks County. *See Thomas v. City of Chester*, Civ. A. No. 15-3955, 2016 WL 1106900, at *2 (E.D. Pa. Mar. 21, 2016) ("A suit for damages against an individual municipal employee in his or her 'official capacity' is not cognizable unless the requirements of *Monell* are met." (citation omitted)); *see also McHugh v. Koons*, Civ. A. No. 14-7165, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Office[] pursuant to *Monell*."). To assert plausible claims against Berks County, the plaintiffs must allege that Berks County has a policy or custom which caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Thus, the plaintiffs "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the county. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)); *McTernan*, 564 F.3d at 659 (explaining that paraphrasing elements, and formulaic recitation of elements do not suffice to state a claim for municipal liability); *Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept.

30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)); *Levine v. Rodden*, Civ. A. No. 15-574, 2015 WL 2151781, at *4 (E.D. Pa. May 7, 2015) (dismissing claims where "[p]laintiff's municipal liability allegations simply paraphrase the pleading standards for municipal liability").

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotation marks and alterations omitted). Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz*, 915 F.2d at 850 (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

In addition,

[t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the

employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (alterations in original) (internal footnote omitted).

Here, the plaintiffs fail to allege that they suffered a constitutional injury due to a policy or custom of Berks County. Indeed, they do not even allege that they contracted COVID-19 or suffered any injury at all. Therefore, the plaintiffs have failed to allege a plausible claim and the court will dismiss their official capacity claims against the Warden and Deputy Warden.

Although the complaint only attempts to assert official capacity claims against the Warden and Deputy Warden, even if the court could construe the complaint as asserting individual capacity claims against these defendants, the plaintiffs' claims would still be implausible. If a plaintiff seeks to hold a supervisor liable for the unconstitutional acts by subordinates, there are two theories of supervisory liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of

and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

Other than list the Warden and Deputy Warden in the caption of the complaint and in the list of defendants, the plaintiffs assert no factual allegations against them. Additionally, and as previously noted, the plaintiffs do not allege that they contracted COVID-19 or suffered any other injury. Accordingly, the plaintiffs have failed to state a plausible claim seemingly solely on the ground that these defendants hold supervisory positions at the BCP.

### 3.   Claims Against Prime Care

The plaintiffs purport to assert claims for violations of the Eighth and Fourteenth Amendments against Prime Care, which is a private company providing medical services at the BCP. "[A] private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (per curiam) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, to hold a private health care company like Prime Care liable for a constitutional violation under section 1983, a plaintiff must allege that the medical provider had "a relevant . . . policy or custom, and that the policy

caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583−84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Okl.*, 520 U.S. 397, 404 (1997)); *Lomax v. City of Philadelphia*, No. 2:13-cv-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotation marks omitted)).

As stated above, the plaintiffs fail to allege that any possible constitutional violations were caused by a policy or custom. Accordingly, their claims against Prime Care are implausible.

### 4.      Leave to Amend

A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

Here, the court will dismiss the claims against all defendants with prejudice because any attempt to amend the claims would be futile. As stated above, the plaintiffs cannot assert a section 1983 claim against the Berks County Jail System because it is not a "person" amenable to suit under section 1983. Concerning the plaintiffs' claims against the Warden, Deputy Warden, and Prime Care, amending the complaint would be futile because a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Hope v. Warden York Cty.*

*Prison*, 972 F.3d 310, 329–30 (3d Cir. 2020) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where a detention facility has taken concrete steps toward mitigating the medical effects of COVID-19, an incarcerated person will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID-19, notwithstanding even serious preexisting medical conditions the prisoner may have. *See id.* at 330–31. Because the plaintiffs fail to allege any injury from the COVID-19 outbreak at the BCP and concede that the BCP has taken steps toward mitigating the spread of COVID-19, even though they believe those steps to have been inadequate, any attempt at amendment to state a plausible claim based on an outbreak of COVID-19 at BCP would be futile.

## III.    CONCLUSION

For the foregoing reasons, the court will grant the IFP Application and dismiss the complaint with prejudice.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.